1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11   OSCAR ALCARAZ, JR.,                    )   Case No.: 1:19-cv-0165 - JLT
                                            )
12              Plaintiff,                  )   ORDER REMANDING THE ACTION
                                            )   PURSUANT TO ENTENCE FOUR OF 42 U.S.C.
13         v.                               )   § 405(g)
                                            )
14   COMMISSIONER OF SOCIAL SECURITY,       )   ORDER DIRECTING ENTRY OF JUDGMENT IN
                                            )   FAVOR OF PLAINTIFF OSCAR ALCARAZ JR.
15              Defendant.                  )   AND AGAINST DEFENDANT, THE
                                            )   COMMISSIONER OF SOCIAL SECURITY
16   _____)

17          Oscar Alcaraz, Jr. asserts he is entitled to a period of disability and disability insurance benefits

18   under Title II of the Social Security Act.  Plaintiff argues the administrative law judge erred in

19   evaluating the record, including his subjective complaints and a disability decision from the

20   Department of Veteran's Affairs.  In addition, Plaintiff contends the ALJ failed to identify a residual

21   functional capacity supported by substantial evidence in the record.  For the reasons set forth below, the

22   matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

23                                    **BACKGROUND**

24          In October 23, 2014, Plaintiff filed his applications for benefits, alleging he became disabled in

25   October 2006 due to Post-Traumatic Stress Disorder.  (Doc. 7-3 at 16; Doc. 7-7 at 45)  The Social

26   Security Administration denied his application at the initial level and upon reconsideration.  (Doc. 7-4

27   at 32; Doc. 7-5 at 23-25)  Plaintiff requested an administrative hearing and testified before an ALJ on

28   November 14, 2017.  (*See* Doc. 7-3 at 16, 31)  The ALJ found Plaintiff was not disabled and issued an

                                             1

order denying benefits on March 30, 2018.  (*Id.* at 16-25)  Plaintiff requested review of the decision with the Appeals Council, which denied the request on December 12, 2018.  (*Id.* at 2-4)  Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

As an initial matter, the ALJ noted Plaintiff "last met the inured status requirement of the Social Security Act on December 31, 2009."  (Doc. 7-3 at 18)  Pursuant to the five-step process, the ALJ determined Plaintiff had not "engage[d] in substantial gainful during the period of his alleged onset date of October 6, 2006 through his date last insured of December 31, 2009."  (*Id.*)  Second, the ALJ found Plaintiff's severe impairments included: "major depressive disorder, post-traumatic stress disorder (PTSD) and anxiety disorder."  (*Id.*)  At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing.  (*Id.* at 18-20)  Next, the ALJ found:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to perform noncomplex routine tasks; can have occasional contact with the public; can have occasional contact with co-workers without teamwork-related tasks[;] and can have occasional changes to the claimant's work routine and environment.

(Doc. 7-3 at 20)  With this residual functional capacity, the ALJ found Plaintiff was unable to perform his past relevant work as a material handler or stock clerk.  (*Id.* at 23)  However, the ALJ determined at step five that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed," such as night custodian, box bender, and truck washer.  (*Id.* at 23-24)  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act "at any time from October 6, 2006, the alleged onset date, through December 31, 2009, the date last insured."  (*Id.* at 24-25)

3

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ "failed to give adequate weight or consideration to evidence of Plaintiff's disability" as determined by the Department of Veteran Affairs.  (Doc. 14 at 7)  In addition, he asserts the ALJ erred in evaluating the credibility of his subjective complaints and determining the residual functional capacity.  (*Id.* at 12-20)  Finally, Plaintiff contends the Appeals Council erred by not remanding the application to further develop the record.  (*Id.* at 21-22)

### A.      Disability Determination by the VA

On February 25, 2014, the Department of Veterans Affairs issued a decision finding related to Plaintiff's application for benefits.  (Doc. 7-11 at 79)  The VA noted Plaintiff was "a veteran of the Peacetime and Gulf War Era," who "served in the Marine Corps from January 2, 1990 to June 27, 1994."  (*Id.*)  The VA found "[s]ervice connection for posttraumatic stress disorder (PTSD) with secondary major depressive disorder" following a review of Plaintiff's "VA treatment records" and a VA exam in January 2012.  (*Id.* at 80)

The examining physician determined Plaintiff's PTSD was "due to the fear of hostile military and/or terrorist activity."  (Doc. 7-11 at 80)  The examiner found Plaintiff had "occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood."  (*Id.*) The VA concluded Plaintiff had a disability rating of "70 percent" as of October 6, 2006, and informed him the finding was based upon the following:

- Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgments, thinking, or mood
- Difficulty in adapting to worklike setting
- Difficulty in adapting to stressful circumstances
- Difficulty in adapting to work
- Suicidal ideation
- The examiner's assessment of your current mental functioning, which is partially reflected in your Global Assessment of Function score found below
- Difficulty in establishing and maintaining effective work and social relationships
- Disturbances of motivation and mood
- Flattened affect
- Anxiety
- Suspiciousness

Your Global Assessment of Function (GAF) score is 50.  A range of 41-50 indicates serious symptoms; or any serious impairment in social, occupational, or school functioning.

4

1   (Doc. 7-11 at 81)  The VA concluded Plaintiff was entitled "to individual unemployability... because

2   the claimant is unable to secure or follow a substantially gainful occupation as a result of service-

3   connected disabilities."  (*Id.* at 82)

4         1.    Consideration by the ALJ

5         The ALJ noted the VA indicated Plaintiff was "entitle[d] to seventy percent (70%) service

6   connected disability due to PTSD."  (Doc. 7-3 at 22) The ALJ addressed this finding as follows:

7   > I note that the standards used by the Department of Veterans Affairs in determining disability are completely different that those used by the Social Security Administration; therefore, I am not bound by the findings set forth in the claimant's Rating Decision (20 CFR 404.1504). Furthermore, I note that an opinion on whether an individual is disabled goes to an issue reserved to the Commissioner and therefore cannot be given special significance; however, such opinions should still be considered in the assessment of the claimant's residual functional capacity (20 CFR 404.1527(e)).  With this in mind, I have fully considered the findings contained within the Rating Decision, including the determination of the claimant's 70% disability rating.  However, I give little weight to such determination due to its inconsistency with the objective medical evidence and the other opinion evidence of record, which rely on standards used by Social Security.

14  (Doc. 7-3 at 22)

15        2.    Analysis

16        Plaintiff argues the ALJ erred in evaluating the VA determination, because "the nine circuits

17  that have considered this issue agree that a VA disability rating is entitled to evidentiary weight in a

18  Social Security hearing."  (Doc. 14 at 7, citing *McCartey v. Barnhart*, 298 F.3d 1072 (9th Cir. 2002))

19  Plaintiff observes that the Ninth Circuit determined "an ALJ must ordinarily give great weight to a VA

20  determination of disability."  (*Id.* at 8, quoting *McCartey*, 298 F.3d 1072))  Thus, Plaintiff maintains the

21  ALJ erred in giving "little weight" to the VA determination and disability rating.  (*Id.*)

22        The Commissioner argues the ALJ "was not required to accept the VA's disability—as many

23  veterans continue to work in the national economy despite a 100% disability rating from the VA."

24  (Doc. 21 at 5)  The Commissioner asserts that "even in *McCartey*, the ALJ is not required to accept the

25  VA rating, but may give less weight to the VA rating by providing specific, valid reasons."  (*Id.*)  The

26  Commissioner contends the ALJ met this burden, by finding the rating "was inconsistent with the

27  medical evidence." (*Id.* at 6)  Further, the Commissioner asserts, "The ALJ also correctly concluded

28  that the ultimate decision of disability under this agency's regulations is reserved solely for the

1 Commissioner." (*Id.* at 6, citing 20 C.F.R. § 404.1527(e); *McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th
2 Cir. 2011))

3          *a.*     *Difference in standards between the VA and SSA*

4       The Ninth Circuit has disapproved giving less weight to a VA determination merely because the
5 standards used by the VA in determining disability are different that those used by the Social Security
6 Administration.  In *McCartey*, the Court acknowledged that "the VA and SSA criteria for determining
7 disability are not identical" but found there was "marked similarity between these two federal disability
8 programs."  *Id.*, 298 F.3d at 1076.  The Court explained:

> Both programs serve the same governmental purpose -- providing benefits to those
> unable to work because of a serious disability. Both programs evaluate a claimant's
> ability to perform full-time work in the national economy on a sustained and
> continuing basis; both focus on analyzing a claimant's functional limitations; and both
> require claimants to present extensive medical documentation in support of their
> claims. *Compare* 38 C.F.R. § 4.1 et seq. (VA ratings) *with* 20 C.F.R. § 404.1 et seq
> (Social Security Disability). Both programs have a detailed regulatory scheme that
> promotes consistency in adjudication of claims. Both are administered by the federal
> government, and they share a common incentive to weed out meritless claims. The
> VA criteria for evaluating disability are very specific and translate easily into SSA's
> disability framework.

15 *Id.* at 1076.  Thus, despite the differences in the standards, the Ninth Circuit determined an ALJ "must
16 ordinarily give great weight to a VA determination of disability."  *Id.*, 298 F.3d at 1076 (citing
17 *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) [VA disability rating is generally entitled to
18 "great weight"]; *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984) [same]).  The Court explained an
19 "ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for
20 doing so that are supported by the record."  *Id.*  Consequently, the ALJ's rejection of the VA disability
21 merely because the standards used by the VA differ from the Social Security Administration—and
22 address an issue reserved for the Commissioner— was an error.

23          *b.*     *Inconsistencies with the record*

24       The ALJ opined the VA's disability rating was "inconsisten[t] with the objective medical
25 evidence and other opinion evidence of record, which rely on standards by Social Security." (Doc. 7-3
26 at 22)  However, the ALJ fails to identify what "other opinion evidence of record" conflicted with the
27 VA determination, or identify specific inconsistencies between the VA determination and "the

objective medical evidence" in the record.[1]  (*See id.*)

It is a fundamental principle that an ALJ must offer more than conclusions and, when faced with a conflict, has a burden to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence," state her interpretation, and make findings.  *See, e.g., Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (to reject findings as inconsistent with the medical record, "the ALJ must do more than offer his conclusions" for the Court to meaningfully review the ALJ's findings).  For example, *McCormick v. Berryhill*, the ALJ gave little weight to the VA's determination that the claimant had a "70% service connected disability for PTSD" on the founds that it was inconsistent with the medical evidence, but did not identify the conflicting evidence or "explain… how it was inconsistent." *Id.*, 2017 WL 1175595 at *1, 3-4 (N.D. Cal. Mar. 30, 2017)  The court found the conclusory statement by the ALJ fell "short of the 'persuasive' and 'specific' justification needed to overcome the 'great weight' normally afforded to the VA' determinations." *Id.*, 2017 WL 1175595 at *4.

Similarly, here, the ALJ offered no more than her conclusion that the VA disability rating of 70% conflicted with "with the objective medical evidence and the other opinion evidence of record." (*See* Doc. 7-3 at 22)  Because the ALJ failed to address the conflict, the unidentified inconsistencies do not support the decision to give little weight to the VA determination and rating.

### c.    Conclusion

The ALJ failed to identify "persuasive, specific, valid reasons… that are supported by the record" for giving less weight to the VA' disability rating.  *See McCartey,* 298 F.3d at 1076.  Thus, a remand is appropriate for the ALJ to re-evaluate the VA determination.  *See McCormick*, 2017 WL 1175595 *4; *see also Young v. Colvin*, 2016 WL 913153 at *4 (C.D. Cal. Mar. 9, 2016) ("Since the

---

[1] The Commissioner argues the "explained that the VA rating was based on Global Assessment of Functioning (GAF) scores, which were entitled to little weight"  (Doc. 21 at 6, citing AR 21 [Doc. 7-3 at 22])  However, the ALJ makes no mention of the GAF scores in explaining her decision to give "little weight" to the VA determination.  (Doc. 7-3 at 22)

When evaluating the decision of an ALJ, the reviewing Court "is constrained to review the reasons the ALJ asserts" and the evidence discussed by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (finding the court erred in affirming "based on evidence that the ALJ did not discuss"). The Ninth Circuit has explained that the Court cannot engage in 'post hoc rationalizations that attempt to intuit what the [ALJ] might have been thinking," and cannot affirm on rationale that was not articulated by the ALJ. *Bray v. Comm'r*, 554 F.3d 1219, 1229 (9th Cir. 2009).  Because the GAF scores were not identified as inconsistencies by the ALJ, the Court is unable to review the record to determine whether the GAF scores were, in fact, inconsistent with the VA determination and support the ALJ's decision.

1   ALJ failed to provide a proper reason for giving little weight to the Department of Veteran's Affairs'

2   disability determination, remand is appropriate.").

3   **B.     Evaluation of Plaintiff's Statements**

4          Plaintiff testified at an administrative hearing before the ALJ on November 14, 2017 (Doc. 7-3

5   at 33, 41)  He said he believed he was unable to work due to PTSD and related conditions.  (*Id.* at 41)

6   Plaintiff reported that during the relevant time period, he was depressed, violent, and "had a lot of

7   anxiety."  (*Id.*)  He stated that around 2009, he "started talking to psychologists" and had individual

8   therapy, which he believed helped.  (*Id.* at 41-42)

9          Plaintiff stated he was able to help care for his children and perform household chores.  (Doc. 7-

10  3 at 41)  He testified that he "spent a lot of time at home," but would leave for medical appointments

11  and to take the kids out occasionally.  (*Id.* at 42) Plaintiff said he was "rarely" able attend activities

12  such as parent-teacher conferences at the school.  (*Id.*) Plaintiff reported that going to the gym helped

13  him, and he went about twelve days each month, when he felt comfortable leaving the house.  (*Id.* at 44,

14  45)  He reported said he felt "heightened awareness" and "fits of rage" when anxious, which happened

15  in "short bursts" of five to twenty minutes, almost daily.  (*Id.* at 43)  He said he had difficulties with

16  sleep, and it "was broken up, anywhere from three to five hours."  (Doc. 7-3 at 44)  In addition,

17  Plaintiff reported difficulties with concentration and focusing prior to 2009. (*Id.* at 44-45)

18         1.      Standards for reviewing a claimant's statements

19         In evaluating a claimant's statements regarding the severity of his symptoms, an ALJ must

20  determine first whether objective medical evidence shows an underlying impairment "which could

21  reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504

22  F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).

23  Second, if there is no evidence of malingering, the ALJ must make specific findings as to the

24  claimant's credibility by setting forth clear and convincing reasons for rejecting his subjective

25  complaints.  *Id.* at 1036.

26         If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's

27  testimony as to the severity of symptoms merely because it is unsupported by objective medical

28  evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991). The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in *Cotton*, 799 F.2d 1403). Further, an ALJ is directed to identify "specific reasons for the weight given to the individual's symptoms," in a manner such that the claimant "and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling[2] 16-3p, 2017 WL 5180304 (2017); *see also Moisa v. Barnhart,* 367 F.3d 882, 885 (9th Cir. 2004) ("findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony").

An ALJ may consider additional factors to assess a claimant's statements including, for example: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of reported by a claimant. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may consider a claimant's reputation for truthfulness, inconsistencies between claimant's testimony and conduct, and a claimant's daily activities).

2. The ALJ's Analysis of Plaintiff's statements

Addressing Plaintiff's statements regarding his impairments and the severity of his symptoms, the ALJ summarized stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. In terms of the claimant's alleged mental impairments, I limit the claimant to noncomplex routine tasks with limited interaction with others and occasional changes to the claimant's work

---

[2] Social Security Rulings (SSRs) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). The Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

1   routine and environment as set forth in the residual functional capacity above. The
2   claimant's subjective reported history cannot substitute for the objective medical
    evidence contained in the record, which provides a more accurate longitudinal history
3   of the claimant's conditions. Turning to the medical evidence, the objective findings in
    this case fail to provide support for the claimant's allegations of disabling symptoms
4   and limitations. More specifically, the medical findings do not support the existence of
    limitations greater than the above listed residual functional capacity.

5   (Doc. 7-3 at 21-22)  The ALJ then summarized the opinions in the medical record related to Plaintiff's

6   impairments. (*See id.* at 22)

7       Plaintiff argues that "the ALJ's assertions fail to comport with case law and are not supported

8   by the evidence in the case record." (Doc. 14 at 13)   The Commissioner argues that "the ALJ did not

9   make a general finding to reject his testimony, but specific findings." (Doc. 21 at 9)

10          *a.     Use of boilerplate language*

11      As an initial matter, the ALJ's finding that "statements concerning the intensity, persistence and

12  limiting effects of these symptoms [were] not entirely credible..." has been criticized by courts—

13  including the Ninth Circuit— as "boilerplate language." *See Laborin v. Berryhill*, 867 F.3d 1151, 1154

14  (9th Cir. 2017) (citing *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012)).  The Ninth Circuit found

15  "this boilerplate language is problematic," and "subverts the way an RFC must be determined relying

16  on credible evidence, including testimony." *Id.*  As a result, the Ninth Circuit determined "inclusion of

17  [the] flawed boilerplate language" "does not ... add anything to the ALJ's determination." *Id.*  Because

18  the ALJ included only the boilerplate language and did not specifically identify "the reasons explained

19  in the decision," her analysis of Plaintiff's subjective complaints was flawed.

20          *b.     Summary of the medical record*

21      In general, "conflicts between a [claimant's] testimony of subjective complaints and the

22  objective medical evidence in the record" can constitute "specific and substantial reasons that

23  undermine . . . credibility." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999).

24  However, as the Ninth Circuit explained, "summariz[ing] the medical evidence supporting [the] RFC

25  determination... is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in

26  order to ... ensure that the claimant's testimony was not arbitrarily discredited." *See, e.g., Brown-*

27  *Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).  As a result, "the observations an ALJ makes as

28  part of the summary of the medical record are not sufficient to establish clear and convincing reasons

for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, 2016 U.S. Dist. LEXIS 102007 at *44 (E.D. Cal. Aug. 3, 2016).

The Court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 494 (emphasis in original) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)) In *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. *Id.*, 806 F. 3d at 491. The district court identified inconsistencies in the ALJ's summary of the medical record that it gave rise to reasonable inferences about Plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the testimony she found not credible and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494. Likewise, here, the ALJ offered little more than a summary of the medical opinion evidence and boilerplate language to support her rejection Plaintiff's credibility.[3]

### c.   *Failure to identify the testimony being discounted*

Finally, the ALJ must identify the testimony that is not credible. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "General findings," such as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted). The Ninth Circuit requires an ALJ to "*specifically identify what testimony is credible* and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which … testimony is not credible and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints"). Because the ALJ did not carry this burden, the Court finds the ALJ failed to properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.

---

[3] A claimant's "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

**C.      The Residual Functional Capacity**

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating a RFC, the ALJ weighs medical and other source opinions, as well as the credibility of a claimant's subjective statements. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

As discussed above, the ALJ erred in reviewing the VA determination and Plaintiff's subjective statements. Because such evidence must be considered to determine Plaintiff's RFC, the errors also impact the RFC determination. Thus, remand is appropriate for the ALJ to re-evaluate the RFC after considering the VA determination and Plaintiff's credibility.

**D.      Duty to Develop the Record**

A claimant bears the burden to provide medical evidence that supports the existence of a medically determinable impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish [his] entitlement to disability insurance benefits"). As the Supreme Court explained, it is "not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen*, 482 U.S. at 146 n.5.

On the other hand, the law is well-established in the Ninth Circuit that the ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). The Ninth Circuit explained:

> The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant. When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts ... The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests.

*Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted). This duty to develop the record also extends to the Appeals Council. *Sims v. Apfel*, 530 U.S. 103, 111 (2000) ("It is the [hearing officer's] duty to investigate the facts and develop the arguments both for

and against granting benefits . . . and the [Appeals] Council's review is similarly broad").

Notably, the law imposes a duty to develop the record only in limited circumstances.  20 C.F.R. § 416.912(d)-(f) (recognizing a duty on the agency to develop medical history, contact medical sources, and arrange a consultative examination if the evidence received is inadequate for a disability determination).  Accordingly, the duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see also Tonapetyan,* 242 F.3d at 1150 ("[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry").

Plaintiff contends, "the Appeals Council committed reversible error by failing to have the case remanded back to the ALJ to have Applicant evaluated by an examining psychiatric evaluator, or having a medical advisor testify at a trial." (Doc. 14 at 21)  Although Plaintiff notes "a substantial amount of new medical records [were] … submitted to the record," after review by the State Agency physicians, Plaintiff fails to identify any ambiguities in the record.  Also, the medical record does not appear inadequate, such that additional information was required to render a decision on Plaintiff's application for benefits.  Thus, Plaintiff fails to demonstrate either the ALJ or Appeals Council had a duty to develop the record.  *See Mayes*, 276 F.3d at 459-60; *Tonapetyan,* 242 F.3d at 1150.

**E.    Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose would

be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ erred in evaluating the VA disability rating and failed to resolve the alleged conflicts in the medical record. *See McCormick*, 2017 WL 1175595 *4; *Young*, 2016 WL 913153 at *4. In addition, the matter may be remanded further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony. *See, e.g., Bunnell*, 947 F.2d at 348; *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true). Thus, the Court finds remand is appropriate for an ALJ to reconsider the evidence— including the decision from the VA— and identify legally sufficient grounds to support the decision.

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds the ALJ erred in her evaluation of the record and failed to apply the correct legal standards.  Consequently, the ALJ's decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510.  Accordingly, the Court **ORDERS**:

1.   The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

2.   The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Oscar Alcaraz, Jr., and against Defendant, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **September 22, 2020**            **/s/ Jennifer L. Thurston**
                                UNITED STATES MAGISTRATE JUDGE